IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jerry Randleman, et al.,                                    Case No. 3:06CV7049

          Plaintiffs,

     v.                                                         ORDER

Fidelity National Title Insurance Company,

          Defendant.


This is a class action suit for declaratory and injunctive relief and recovery of money damages against a provider of title insurance to institutions making loans to homeowners. Named plaintiffs are homeowner-borrowers who refinanced a mortgage on their home. The lender obtained lenders title insurance from the defendant, Fidelity National Title Insurance Company [Fidelity]. Such insurance protects the lender's interest in the mortgaged property against defects in the title. Once the loan is paid, the insurance expires.

Plaintiffs claim that the premium paid for the title insurance exceeded the premium allowed by Ohio law, and that they have been injured and wronged by defendant's failure to charge them a lower premium, as provided by such law. The plaintiffs assert this claim even though they were not named insureds under the policy.

Plaintiffs' complaint asserts several claims: breach of contract, fraud, breach of fiduciary duty, conversion, unjust enrichment, and breach of the duty of good faith and fair dealing. Defendant seeks dismissal as to all claims.

This court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

Pending is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the following reasons, defendant's motion shall be granted in part and denied in part.

## Background

Jerry and Diane Randleman, the named plaintiffs, sue Fidelity on behalf of all homeowners in Ohio who, at any time from 1995 to the present: 1) were required to pay a premium to Fidelity for title insurance acquired in connection with a refinancing transaction; 2) qualified for a discounted reissue rate pursuant to the rate schedule filed by Fidelity with the Ohio Department of Insurance [ODI]; and 3) did not receive such discounted reissue rate.

Plaintiffs claim that Ohio law obligated Fidelity to charge a lower [i.e., "discounted"] premium where Fidelity was issuing lenders title insurance as to individual residential property that had been the subject of title insurance ["original" insurance] within ten years prior to the refinancing transaction for which Fidelity was providing lenders title insurance.

According to the complaint, Fidelity, rather than charging the discounted rate as required under Ohio law, charged the rate applicable to issuance of an original lenders title insurance policy. Plaintiffs seek to recover the difference between the rate charged by Fidelity and the discounted rate they allege should have been charged. They purport to represent all similarly situated refinancing homeowners who qualified for the discounted premium, but who, like the named plaintiffs, were charged a higher, non-discounted rate.

## Discussion

---

[1]

Consideration of class certification has been held in abeyance pending adjudication of the motion to dismiss.

2

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (citations omitted). In considering the motion, the court must accept all factual allegations in the complaint as true. *Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citation omitted). The court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Sogevalor S.A. v. Pa. Cent. Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991). Only well pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*). Motions to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## 1. Jurisdiction of the Ohio Department of Insurance

Defendant asserts that the ODI has exclusive jurisdiction over this dispute. Describing Ohio's comprehensive insurance regulatory scheme, defendant argues that the complaint involves a dispute over the correct rate to be assessed, an issue that the ODI is uniquely qualified to resolve. Plaintiffs respond that they are not challenging the reasonableness of an approved rate, but instead address defendant's business practices [including their routine charging of a higher rate], an issue over which, according to the plaintiffs, the ODI should not have exclusive jurisdiction.

Under the primary jurisdiction doctrine, when a court can properly hear a claim that contains an issue within the special competence of an administrative agency, a court may stay court

proceedings to allow the agency to make its determination. *See, e.g., U.S. v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000) (citing *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) and *U.S. v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997)).

Plaintiffs allege exclusively state common law claims. These issues are within the conventional competence of judges; adjudication of such claims does not require the unique expertise of the ODI. *See Barnes v. First Am. Title Ins. Co.*, 2006 WL 2265553 (N.D. Ohio) (finding on nearly identical facts and claims that the federal district court retained subject matter jurisdiction); *Chesner v. Stewart Title Guar. Co.*, 2006 WL 2252542 (N.D. Ohio) (same). Thus, this court will retain exclusive jurisdiction over plaintiffs' claims.

### 2. Breach of Contract

Count II of plaintiffs' complaint asserts, without specifying the specific nature of the contract, that defendant breached its contractual obligations to the plaintiffs.

Ohio recognizes three types of contracts: express, implied-in-fact, and implied-in-law. *See, e.g., Linder v. Am. Natl. Ins. Co.*, 155 Ohio App. 3d 30, 37 (2003).

An express contract requires offer, acceptance, and mutual assent. *Id.* An implied-in-fact contract requires assent, but the court must construe the facts and circumstances surrounding the offer and acceptance to determine the terms of the agreement. *Id.* Contracts implied-in-law (or quasi-contracts) arise where one party wrongfully receives a benefit that gives rise to a legal obligation. *Id.*

### A. Express Contract

Defendant argues that plaintiffs fail to state a claim for breach of an express contract because plaintiffs are not in contractual privity.

4

The basis of defendant's contention is the fact that the defendant provided the policy to the lender, not to the plaintiffs, and the lender was the only named insured. Thus, defendant contends that the plaintiffs had nothing to do with the issuance of the policy, and were not in privity with the defendant.

Only a party to a contract or an intended third-party beneficiary may bring an action on a contract in Ohio. *See, e.g., Mergenthal v. Star Banc Corp.*, 122 Ohio App. 3d 100, 103 (1997) (citation omitted). Because plaintiffs' lender–not the plaintiff–is the beneficiary of the title insurance policy, the plaintiff cannot sue the defendant for breach of the terms and conditions, including terms and conditions relating to the formation between the lender and defendant of the lenders title insurance policy.

### B. Third-Party Beneficiary Status

Plaintiffs cannot recover as third-party beneficiaries.

For a third-party beneficiary to be an intended beneficiary, the contract must have been entered into directly or primarily for the benefit of that individual. *See, e.g., Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 863 (6th Cir. 2002) (citing *Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.*, 43 Ohio App. 3d 201, 204 (1988)); *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 2002 WL 440749, at *3 (Ohio App.). That the third party receives an indirect or incidental benefit from the contract is insufficient to provide the third party with a cause of action on a contract. *Id.* The performance of the promise benefitting the beneficiary must also satisfy a duty owed by the promisee to the beneficiary. *Id*.

The court in *Shearer v. Echelberger*, 2000 WL 1663626 (Ohio App.), rejected an attempt by homeowners to sue as third-party beneficiaries under a policy of title insurance, which, like the

policy at issue here, named only the lender as a named insured. To be sure, plaintiffs' refinancing triggered the purchase of the policy, but the purpose of the policy was to protect the lender, not the plaintiffs.

Because the policy was not entered into directly or primarily for their benefit, plaintiffs cannot sue under the policy as intended third-party beneficiaries.

### C. Implied-in-Fact Contract

Plaintiffs claim that the defendant breached an implied-in-fact contract. The elements of an implied-in-fact contract are the same as those of an express contract: offer, acceptance, consideration, and a meeting of the minds. *Danko v. MBIS, Inc.*, 1995 WL 572021, at *3 (Ohio App.) (citations omitted).

Defendant first argues that plaintiffs cannot pursue a claim of breach of an implied-in-fact contract because plaintiffs do not specifically refer to an implied-in-fact contract in their complaint. To be sure, plaintiffs' first specific mention of an implied-in-fact contract appears in their opposition to defendant's motion to dismiss. But the label a plaintiff applies to a pleading does not control the nature of the cause of action being asserted. *See, e.g., Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (citing *U.S. v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955)). A plaintiff's failure to categorize the legal theory giving rise to a claim does not matter as long as the complaint alleges facts on which relief can be granted. *See, e.g., Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)).

Plaintiffs' complaint contains direct or inferential allegations with respect to all essential elements of a claim of breach of an implied-in-fact contract. They allege: 1) they paid a premium for the purchase of title insurance from Fidelity; 2) plaintiffs' lender was the beneficiary of this title

6

insurance policy; 3) Fidelity had the obligation to charge a premium complying with the rate schedule it filed with the Ohio Department of Insurance; 4) Fidelity charged more than the rate schedule premium; and 5) Fidelity failed to inform plaintiffs that they qualified for the discounted rate.

These facts sufficiently allege that the plaintiffs entered into an implied-in-fact contract with Fidelity under which Fidelity, in consideration of the plaintiffs' anticipated payment at closing of the premium for the title insurance being charged by Fidelity, agreed to issue a title insurance policy to the plaintiffs' lender. By issuing the policy to the lender, Fidelity implicitly assented to the terms of the implied-in-fact contract, which, in turn, implicitly provided that the cost of the insurance would be lawful [i.e., in conformity with the rate schedule].

Fidelity, plaintiffs, and plaintiffs' lender were a part of an integrated refinance transaction, and plaintiff should be permitted to obtain discovery to show that all parties, including Fidelity, knew that plaintiffs, as the borrowers, were to be charged for, and would pay, the premium. If so, and if Fidelity overcharged for the premium [while concurrently not informing plaintiffs that they qualified for the discount], plaintiffs may prevail on their claim of breach of an implied-in-fact contract.[2]

---

[2]

This conclusion is consistent with Judge Christopher Boyko's analysis in *Barnes v. First Am. Title Ins. Co.*, 2006 WL 2265553 (N.D. Ohio), and *Chesner v. Stewart Title Guar. Co.*, 2006 WL 2252542 (N.D. Ohio), which involved lenders title insurance policies issued in mortgage refinancing transactions similar to the transaction giving rise to this lawsuit. In those cases, the court found that plaintiffs alleged facts sufficient to support a claim for breach of an implied-in-fact contract: the plaintiffs' purchase of title insurance from the title insurer, the plaintiffs' entitlement to the discounted rate, and the title insurer's failure to inform plaintiffs that they qualified for this discount. *See Barnes*, 2006 WL 2265553, at *5; *Chesner*, 2006 WL 2252542, at *5.

7

In response to plaintiffs' claim that failure to charge the discounted premium breached its contractual obligations to the plaintiffs, Fidelity argues that: 1) ODI regulations governing lenders title policies imposed a condition precedent to the duty to charge the discounted rate; 2) plaintiffs failed to satisfy that condition precedent; and 3) such failure on plaintiffs' part disqualified plaintiffs from a claim of entitlement to the discounted rate.

The regulations on which Fidelity bases its claim that plaintiffs failed to comply with a condition precedent state:

PR-9: Reissue Title Insurance Rate Loan Policies

When the owner of land on which application is made for a Loan Policy has had the title to such land insured in said owner by an owner's title insurance policy issued within ten (10) years of the date of the application for a Loan Policy, such owner shall be entitled to a reissue rate of seventy percent (70%) of the rate for original Loan Policy up to the fact amount of such Owner's Policy, provided that the owner-applicant provides a copy of said Owner's Policy or such other information to enable the Insurer to verify the representations made. . . .

PR-10: Title Insurance Rate For Refinance Loans

When a refinance loan is made to the same borrower on the same land, the following rate will be charged for issuing a policy in connection with the new loan on so much of the amount of the new policy as represents the unpaid principal balance secured by the original loan; provided the Insurer is given a copy of the prior policy, or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested, and the amount of the unpaid principal balance secured by the original loan.

Ohio Title Insurance Rating Bureau, *Schedule of Rates for Title Insurance in the State of Ohio* (2003).

There is no doubt that plaintiffs did not submit a copy of a prior policy of title insurance.[3]

---

[3] Plaintiffs contend that they could not have done so, because they would not have received a copy of the policy of lenders title insurance vis-a-vis their original financing. That may have been so,

Defendant argues that the regulations make such submission a condition precedent to plaintiffs' entitlement to the discounted rate for issuance of the lender's policy for their refinancing.

There is no reason to believe that plaintiffs were aware of, and it appears unlikely that defendant or the lender informed the plaintiffs about the requirement that plaintiffs needed to provide a copy of a prior policy or present other information indicating that they had had such insurance within ten years prior to the refinancing.

Under these circumstances, it is at least arguable that the defendant waived any right, as may have been provided to it under the Regulation, to confirmation that a prior policy had issued. Defendant has not argued why it should be that a *de facto* uninformed borrower can be held to perform a condition precedent where the insurer, presumptively well informed about all applicable regulations, declines to inquire of the lender or borrower, or otherwise ascertain whether a prior policy was issued within the ten-year period.

The Regulation's precondition protects, and thus solely benefits, title insurers; if they elect not to invoke its provisions by asking for production of a prior policy or pertinent information in lieu of such policy, they should not be permitted to complain about the failure of the borrower [or lender] to produce such copy or information.[4]

---

but the Regulation does not require production of a prior lender's policy. Plaintiffs may, however, have received a copy of any title insurance policy issued to them as purchasers. Production of that homeowner's title insurance policy [or other information about a prior policy] – and not just a prior lenders policy – would have satisfied the regulations.

[4]

This would be particularly true if the insurer knew, had reason to know, or could have ascertained through its own title work that a prior policy had issued. In such circumstances, the insurer would have gained nothing by invoking the precondition; indeed, it would have no reason to do so other than as a pretext for charging a rate higher than that allowed under the Regulation without any risk of harm to itself.

9

Defendant argues that by issuing an express written insurance policy to plaintiffs' lender, it intended to be bound exclusively to plaintiffs' lender [and not to plaintiffs] under an express contract to provide title insurance to the lender. Defendant alludes to the rule that no contract may be implied as to matters covered by an express contract between the parties. *See, e.g., McClorey v. Hamilton Cty. Bd. of Elections*, 130 Ohio App. 3d 621, 626 (1998) (citation omitted).

This rule is inapplicable here. The complaint alleges facts from which the court may infer the existence of two contracts, each involving a different set of parties: an express contract between defendant and plaintiffs' lender to provide lenders title insurance to the lender; another, implied-in-fact, between defendant and plaintiffs for the defendant to issue such policy to the lender, so that the refinancing proceeds forward.

The defendants argue that such an implied-in-fact contract to issue a policy of title insurance to a third party [i.e., the lender] at the behest of plaintiffs would constitute the "business of title insurance" under O.R.C. § 3953.01(B). As such, defendant contends, the implied-in-fact contract would be illegal under Ohio law for failure to conform to the requirements of O.R.C. § 3953.28.[5] This provision mandates that every title insurer file with the ODI all forms of title policies and other contracts of title insurance before issuing such agreements.

The implied-in-fact contract alleged by the plaintiffs, however, is neither a title policy

---

[5]

In making this argument, defendant implicitly acknowledges that the conduct of its business must conform with ODI regulations, including those relating to its rates. Defendant cannot, however, seek to protect itself by claiming that the contract being asserted against it does not conform to the regulations, while repudiating any obligation under the regulations to charge the prescribed rate.

nor a contract of title insurance. Rather, the implied-in-fact contract alleged by plaintiffs requires that defendant issue a title insurance policy [per the appropriate form on file with the ODI] to plaintiffs' lender, and that it do so in accordance with applicable law, including ODI regulations.

Defendant also argues that plaintiffs' interpretation of the purported implied-in-fact contract renders the express lenders title insurance contract between Fidelity and the lender void for lack of consideration. Specifically, defendant claims that, under plaintiffs' interpretation of the implied-in-fact contract, plaintiffs paid the title insurance premium in exchange for defendant's promise to issue a title insurance policy to plaintiffs' lender.

In Ohio, mutual concurrent promises may be consideration for each other. *See, e.g., Energy Wise Home Improvements, Inc. v. Rice*, 2005 WL 1300765, at *2 (Ohio App.). Under the implied-in-fact contract, as alleged here, plaintiffs promised to provide the funds for the title insurance premium, and defendant promised, in anticipation of receipt of those funds, to issue a title insurance policy to plaintiffs' lender. The title insurance policy, in contrast, involved the lender's actual transfer of the funds being made available from the borrowers in exchange for defendant's actual issuance of a title insurance policy to plaintiffs' lender. Viewed thusly, requisite consideration underlies both transactions.

The defendant's motion to dismiss the plaintiffs' breach of contract claim shall be overruled.

### 3. Fraud

Count III of plaintiffs' complaint asserts a claim of fraud based on defendant's failure to charge the applicable rate and defendant's concealment of the plaintiffs' entitlement to that rate.

To prove fraudulent misrepresentation or concealment, a plaintiff must establish: 1) a

11

representation or, where there is a duty to disclose, concealment of a fact; 2) that is material to the transaction; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with intent to mislead another into relying on the misrepresentation or concealment; 5) justifiable reliance upon the representation or concealment; and 6) injury proximately resulting from such reliance. *See, e.g., Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, 73 (1986) (citations omitted), *superceded by statute on other grounds*.

Defendant argues that plaintiffs' claim for fraud must be dismissed because plaintiffs allege mere nondisclosure, rather than concealment. Plaintiffs correctly respond that, in general, a fraud claim does not encompass only an affirmative misrepresentation or concealment, but may also involve a failure to disclose material facts in situations in which one has a duty to speak. *See, e.g., Starinki v. Pace*, 41 Ohio App. 3d 200, 203 (1987) (citation omitted).

Where concealment is alleged, as it is here, plaintiffs must also allege an underlying duty to speak for the nondisclosure to be actionable. *See, e.g., Schulman v. Wolske & Blue Co., L.P.A.*, 125 Ohio App. 3d 365, 372 (1998). The duty to speak may arise where, because of one party's position, a second party reposes confidence in the first party, who, in turn, learns of the confidence being placed in it. *See, e.g., Central States Stamping Co. v. Terminal Equip. Co., Inc*., 727 F.2d 1405, 1409 (6th Cir. 1984) (citing *Smith v. Patterson*, 33 Ohio St. 70, 75-76 (1877)).

Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pleaded with particularity. The Sixth Circuit liberally construes this requirement. *See, e.g., Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) (holding that Rule 9(b) should not be read in an overly restrictive manner to weed out

12

claims).

In determining whether a plaintiff has plead fraud with particularity, a court must consider the Federal Rules' policy of simplicity in pleading. *See, e.g., Michaels Bldg.,* 848 F.2d at 679; Fed. R. Civ. P. 8. To fulfill the requirements of Rule 9(b), a plaintiff must plead a fraud claim in a manner that places the defendant on "sufficient notice of the misrepresentation" such that a defendant can answer the fraud claim "in an informed way." *Coffey,* 2 F.3d at 161 (citation omitted).

In their fraud by concealment claim, plaintiffs insufficiently allege the existence of a duty to speak. Paragraph 47 simply alleges "defendant failed to disclose material information under a duty to speak." The balance of the fraud count describes what defendant failed to tell the plaintiffs, but plaintiffs allege nothing else about defendant's duty to inform them about their eligibility for the discounted premium.

As with other elements of a fraud claim, a plaintiff must plead with particularity that the defendant owed the plaintiff a duty to disclose. *See Zangara v. Travelers Indem. Co. of Am.*, 423 F. Supp. 2d 762, 770 (N.D. Ohio 2006), *vacated on other grounds,* (citing *TXI Operations, LP v. Pittsburgh & Midway Coal Mining Co.*, 2004 U.S. Dist. LEXIS 18047 at *3-4 (N.D. Tex.)). This requires that a plaintiff  allege with reasonable particularity: 1) the relationship or situation giving rise to the duty to speak; 2) the event or events triggering the duty to speak and/or the general time period when the relationship arose and fraudulent conduct occurred; 3) the general content of the information withheld and its materiality; 4) the identity of those breaching the duty to disclose; 5) what the defendant gained by withholding information; 6) why plaintiff's reliance on the omission was both reasonable and detrimental; and 7) damages proximately flowing from the reliance. *Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, 394 F. Supp. 2d 762, 767 (M.D.N.C. 2005)

(citations omitted).

This requirement has not been met by the conclusory allegation that a duty to speak existed. Plaintiffs had to allege more, and to point to a basis in law or fact for their allegation. They have not done so, and their fraud claim must be dismissed.

### 4. Filed Rate Doctrine

Defendant claims that it could not be charged with having concealed its rates, which were filed with the Ohio Department of Insurance and were thus readily available to the public.

In making this contention in support of its motion to dismiss, defendant relies on the "filed rate doctrine," under which, according to the defendant, plaintiffs are conclusively presumed to have had knowledge of the complete contents of the Schedule of Rates.

Pursuant to the filed rate doctrine, any rate approved by the governing regulatory agency is *per se* reasonable and unassailable in actions brought by ratepayers. *See, e.g., Miranda v. Michigan*, 168 F. Supp. 2d 685, 692-93 (E.D. Mich. 2001) (citing *Wegoland Ltd. v. NYNEX* Corp., 27 F.3d 17, 18 (2d Cir. 1994)). The filed rate doctrine has two main purposes. These are to: 1) prohibit a regulated entity from discriminating between customers by charging a rate for its services other than the rate filed with the regulatory agency; and 2) preserve the authority and expertise of the rate-regulating agency by barring a court from enforcing the statute in a way that substitutes the court's judgment as to the reasonableness of a regulated rate. *Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 943 (8th Cir. 2006) (citations omitted).

The filed rate doctrine is inapplicable in this action. Plaintiffs are not challenging the reasonableness of the filed rate, but instead attempt to enforce a contract incorporating a filed rate. The filed rate doctrine, accordingly, does not bar plaintiff's claims.

14

### 4. Breach of Fiduciary Duty

Plaintiffs claim that Fidelity owed them fiduciary responsibilities, which Fidelity breached by not charging the discounted rate.

A fiduciary relationship may be created out of an informal relationship when both parties understand that a special trust or confidence has been reposed by one party in the other. *See, e.g., Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St. 3d 433, 442 (1996). A fiduciary relationship need not be created by contract. *See, e.g., Stone v. Davis*, 66 Ohio St. 2d 74, 78 (1981).

In *Lee v. Cuyahoga Cty. Ct. of Common Pleas*, 76 Ohio App. 3d 620, 623 (1991), for example, the court held that appellant's claim that she maintained a special trust or confidence in her employer, without the further allegation that both parties understood that this fiduciary relationship existed, failed to state a claim for breach of fiduciary duty.

Fidelity argues that plaintiffs' claim of breach of fiduciary duty must be dismissed because they do not allege either directly or indirectly that a mutually understood special relationship existed between the parties.

To be sure, plaintiffs complaint alleges that "Plaintiffs and the class members reposed a special trust and confidence in Fidelity and/or its agents." [Doc. 1, ¶ 34]. Plaintiffs fail, however, to make any direct or inferential allegations that defendant understood that a special relationship existed. Unilateral trust without a known reciprocal obligation is not sufficient to create a fiduciary duty. *See Slovak v. Adams*, 141 Ohio App. 3d 838, 847 (2001). Here, as in *Lee*, plaintiffs' claim for breach of fiduciary duty fails because plaintiff has not alleged that both parties understood that a fiduciary relationship existed between them.

### 5. Unjust Enrichment

15

Plaintiffs claim that Fidelity has been unjustly enriched at the expense of plaintiffs and the other class members. Plaintiffs further claim they have suffered damages as a direct and proximate result of defendant's unjust enrichment.

Unjust enrichment exists where: 1) a benefit is conferred by a plaintiff on a defendant; 2) the defendant has knowledge of the benefit; and 3) the defendant retains the benefit under circumstances where it is unjust to do so. *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).

Defendant's main contention is that the plaintiffs must have conferred the alleged benefit [i.e., the excess premium] *directly* on it, and that plaintiffs have failed to allege direct conferral from them to the defendant.

Plaintiffs counter by first arguing that no facts in the complaint reveal that the benefit was indirect rather than direct. Second, plaintiffs contend that Ohio law does not require direct [i.e., in effect, hand-to-hand] contact, or something else approximating something like privity with the unjustly enriched party before one can bring a claim for unjust enrichment.

The requirement in actions for unjust enrichment that a plaintiff must confer a benefit on the defendant contains an element of causation. *Tri-Med Fin. Co. v. Prudential Sec., Inc.*, 1997 U.S. Dist. LEXIS 23701, at *25-26 (S.D. Ohio) ("'To recover under a theory of unjust enrichment, the complaining party must show not only loss on one side but gain on the other, with a tie of causation between them.'") (*quoting Fairfield Ready Mix v. Walnut Hills Assoc.*, 60 Ohio App. 3d 1, 3 (1988)).

Cases cited by defendant show that the "tie of causation" does not exist when plaintiff and defendant are not involved together in an economic transaction. *Johnson,* 106 Ohio St. 3d at 286;

16

*Eisenberg v. DeGross*, No. 1:04 CV 1081, slip. op. at 24 (N.D. Ohio Feb. 1, 2006).

Defendant cites *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938), for the proposition that the benefit must be direct. That case, however, does not deal with the issue of "directness" whatsoever, except in finding that a quasi-contract *did* exist between a woman and her mother- and father-in-law, even though the woman's husband was the person who technically struck the oral agreement in question. *Id*. at 529-30.

Defendant also cites to *Eisenberg,* slip op. at 26, and *Johnson v. Microsoft*, 106 Ohio St. 3d 278, 286 (2005), on the issue of directness. In both cases, however, the court was presented with vastly different facts and highly attenuated relationships between the plaintiffs and defendants.

In *Eisenberg* parents of a minor who had been furnished alcohol sued producers of alcoholic beverages. Suing on behalf of a class of parents, plaintiffs alleged the defendants advertised their products to underage children, who used their parents' funds to acquire alcohol from retailers.

The parents' claims that the manufacturers were thereby unjustly enriched were dismissed because the parents did not confer a benefit upon the defendants. Specifically, the parents "failed to allege any economic transaction between themselves and the defendants." *Eisenberg*, No. 1:04 CV 1081, slip. op. at 24.

In *Johnson*, the "principle issue" was whether a retail purchaser of a computer from Gateway, Inc. containing a Microsoft Windows 98 operating system could file a class action under Ohio's Valentine Act, O.R.C. § 1331.01 *et seq*., against Microsoft for monopolistic pricing of its software. 106 Ohio St. 3d at 279. The court held that under federal and state law, indirect purchasers are prohibited from filing such antitrust claims. *See id.* at 282 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

17

In addition to antitrust claims, the plaintiff in *Johnson* had also asserted, though she had dealt only with Gateway, that Microsoft was unjustly enriched by her purchase. Dismissing this claim, the court held that because "no economic transaction occurred between Johnson and Microsoft, . . ., Johnson cannot establish that Microsoft retained any benefit. . . ." *Id.* at 286.[6] In this case, to the contrary, plaintiffs have alleged that they engaged in an economic transaction with the defendant.

Defendants also cite to *City of Cleveland v. Sohio Oil Co.*, 2001 WL 1479233 (Ohio App.), in which the City claimed that Sohio had unjustly enriched itself when it breached a contractual commitment not to permit overnight parking at a location near Hopkins airport. The court held that due to the existence of a written contract covering the defendant's alleged misconduct, the plaintiff could not bring an unjust enrichment claim absent bad faith. *Id*. at *6-7.

In dictum the court also noted that the unjust enrichment case failed because the benefit to Sohio, if any, had been conferred by its customers, not the City. *Id*. at *7. In this case, in contrast, plaintiffs allege that the benefit to the defendant came from the plaintiffs, not a third party [i.e., the lender], as in *City of Cleveland*.

In this case, plaintiffs assert that they engaged in an economic transaction with the defendant whereby the defendant "overcharg[ed] homeowners." [Doc. 1, ¶ 7].  The complaint refers to the homeowners as "customers" of defendant [*Id.* at ¶ 3], and the class of plaintiffs consists of those who, among other things, "paid premiums for the purchase of title insurance from defendant Fidelity

---

[6] The ruling on Johnson's unjust enrichment claim was also highly dependent on the outcome of the antitrust action.  *See id.* The court expressed a concern that the unjust enrichment claim would constitute "'an end run around the policies allowing only direct purchasers to recover'" in antitrust suits. *Id.* Unlike *Johnson*, this case presents no antitrust claims, and thus no potential for misuse of the unjust enrichment claim to undercut antitrust doctrine or rulings.

in connection with a refinance transaction." [*Id*. at ¶ 17].

These allegations of a transactional nexus between plaintiffs and defendant distinguish this case from the decisions on which defendant relies.[7]

### 6. Duty of Good Faith and Fair Dealing

Plaintiffs allege that the defendant owed the plaintiffs an actionable "duty of good faith and fair dealing." Plaintiffs further contend that defendant breached that duty by failing to: 1) provide "discounted reissue rates for which they were qualified"; and 2) "inform plaintiffs and the class members that they qualified" for such rates.

It is well established that almost every contract implies a duty of good faith and fair dealing in its performance, and a breach of that duty amounts to a breach of the contract. *See, e.g., Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 462-63 (2005); *B-Right Trucking Co. v. Interstate Plaza Consulting*, 154 Ohio App. 3d 545, 555 (2003). This general principle by no means implies, however, that breaching the duty of good faith gives rise to a supra-contractual cause of action. *See, e.g.*, *Walker v. Dominion Homes, Inc.*, 164 Ohio App. 3d 385, 396-97 (2005).

As *Barnes*, 2006 WL 2265553, at *5-6, and *Chesner*, 2006 WL 2252542, at *5-6, point out in cases involving virtually identical facts to those alleged in plaintiffs' complaint, a claim of breach of good faith by an insurance company is limited to certain aspects of the insurer's relationship with its insureds. As the Ohio Supreme Court stated in *Tokles & Son, Inc. v. Soc'y Nat'l Bank*, 65 Ohio St. 3d 621, 629 (1992), "an insurer owes a duty of good faith to its insured in the processing,

---

[7]Judge Boyko's decisions in *Barnes, supra*, and *Chesner, supra*, do not specifically address the issue of "directness." He concluded, though, that the elements of unjust enrichment had been successfully pleaded under similar facts. I concur in the result reached by my colleague for the reasons expressed herein.

payment, satisfaction, and settlement of the insured's claims." *See also Fair v. State Farm Fire and Cas. Corp.*, 426 F. Supp. 2d 672, 677-78 (N.D. Ohio 2006) (holding that "[a]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured").

In *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 275 (1983) (quoting *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 118 (6th Cir. 1976)), the Ohio Supreme Court listed the reasons for imposing an actionable duty of good faith on an insurer with regard to the handling and payment of claims: 1) the [pre-existing] relationship between the insurer and insured; 2) the insured's lack of voice in the preparation of the policy [and thus lack of control over its terms]; 3) the disparity in economic positions between the parties; and 4) the vulnerability of the insured during a time of financial distress to oppressive tactics by an insurer.

Some of the most significant of those reasons do not exist here: plaintiffs have not alleged that a pre-existing insurer/insured relationship between them and the defendant, and the desire to obtain refinancing is not the equivalent of the financial distress typically encountered by an injured insured following an accident.

There is, moreover, no need to endorse a novel cause of action in view of the viability of plaintiffs' claims for breach of contract and unjust enrichment. By approving this cause of action in the absence of any indication that it would be accepted by Ohio's courts, this court would accomplish, and the plaintiffs would gain, little, if anything, except increased complexity and uncertainty.

I conclude, accordingly, that a free-standing cause of action for breach of the duty of good faith and fair dealing does not lie in this case.

### 7. Conversion

Plaintiffs allege that the defendant converted "monies belonging to plaintiffs and the class members" and that they have suffered damages as a result. [Doc. 1, ¶ 60].

An action for conversion requires that the defendant "have an obligation to deliver specific money as opposed to merely a certain sum of money." *See Chesner*, 2006 WL 2252542, at *9 (quoting *NPF IV, Inc. v. Transitional Health Services*, 922 F. Supp. 77, 82 (S.D. Ohio 1996)). Further, an action for money is only possible when the money is "earmarked" and where "there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Haul Transport of VA, Inc. v. Morgan*, 1995 WL 328995, at *4 (Ohio App.).

Defendant's primary argument against plaintiffs' conversion claim is that the allegedly converted monies were not kept in a segregated account.  Citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 226-27 (1976), plaintiffs counter that "intangible rights which are customarily merged in or identified with some document" may also be the subject of conversion. Defendant replies that the "document" in question does not exist, since plaintiff is alleging an implied-in-fact contract and not a written agreement between the parties.

Plaintiffs do not allege in the complaint that the monies received by defendant were "earmarked" or that there was an obligation to keep the monies segregated from other funds.  Nor can one reasonably infer from the complaint that defendant was under any obligation to keep the funds intact.    The cases on which plaintiffs rely are inapposite. In *Zacchini* the court refers to such documents as "drafts, bank passbooks, and deeds,"  47 Ohio St. 2d, at 226, which are readily distinguishable from the written lender's title policy obtained, according to plaintiffs' implied contract theory, at their behest.

The cases on which plaintiffs rely are inapposite. At issue in *Marion Plaza v. Fahey Banking*

21

*Co.*, 2001 WL 218434, at *1 (Ohio App.),were designated insurance *proceeds* for damaged collateral in which one party claimed to have a perfected security interest. Likewise, *Silverman v. American Income Life Insurance Company of Indianapolis*, 2001 WL 1607635, at *11-12 (Ohio App.), also involves specifically identifiable funds distinguishable from the ordinary premium payments at issue here.

Plaintiffs fail to state a cause of action for conversion.

## Conclusion

For the foregoing reasons, it is

ORDERED THAT: that defendant's motion to dismiss be, and the same is denied with regard to plaintiff's claims for breach of contract and unjust enrichment, and that the motion otherwise be, and hereby is granted.

A scheduling conference is set for December 11, 2006 at 11:30 a.m.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge

22